# Richmond

' James Thomas Slate and Citizens Rapid Transit Corporation v. Viola C. Saul, Administratrix, etc.

November 25, 1946.*

Record No. 3067.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston and Spratley, JJ.

*Due to conditions over which this court had no control, the task of preparing this opinion had to be reassigned.

The opinion states the case.

*T. Justin Moore, E. Sclater Montague* and *Patrick A. Gibson,* for the plaintiffs in error.

*Walter W. Wood* and *Murray A. Stoller,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

James Thomas Slate and Citizens Rapid Transit Corporation were the defendants in an action at law brought by Viola C. Saul, administratrix of H. H. Saul, to recover damages for the wrongful death of her decedent. A verdict and judgment were recovered in her favor for $13,750.

On January 9, 1945, H. H. Saul left his home in the city of Roanoke, accompanied by his wife and two grandchildren, to visit his son, H. E. Saul, who, at that time,

resided in Copeland Park, Warwick county, Virginia. On the afternoon of January 11, he left his son's home in Copeland Park in his automobile, with his two grandchildren, ages ten and twelve, respectively, for the purpose of meeting his son at Langley Field at four p. m. He was driving a Studebaker sedan in a southerly direction on Aberdeen road in Warwick county. This road intersects with Shell road, which runs in an easterly and westerly direction. He intended to proceed on Shell road in an easterly direction toward Hampton.

Just a short distance from the intersection of Aberdeen and Shell roads there is a small parkway dividing Aberdeen road, and at the southern end of the parkway there was a stop sign indicating that those who intended to enter Shell road from Aberdeen road should stop. Saul was driving very slowly, from five to ten miles an hour, and there was no evidence that he did not obey the stop sign. It is presumed that he stopped. Shell road at this point is level and practically straight, and there is an unobstructed view to the east for a distance of 500 feet or more. The weather was clear, the road dry, and the visibility good.

As Saul proceeded slowly into the intersection, after having proceeded forty-four feet beyond the stop sign, and after he had turned his car to the east, his car was struck by a bus which was proceeding west on Shell road. This bus was owned by the Citizens Rapid Transit Corporation and operated by their regular driver, James Thomas Slate.

Immediately preceding the impact the driver applied the brakes on the bus, which were in good condition. After the application of the brakes, and after the Saul car had been struck and completely demolished, the bus turned further to the left, ran up a small embankment, sheared off a fence post, and came to rest in a soggy, plowed field, more than seventy feet from the point of impact. The Saul automobile was struck on the left front and was knocked a distance of forty-four feet.

Saul was thrown from his car to the street, and passed away some thirty-six hours later, from the injuries received in the collision.

The plaintiffs in error do not contend that the driver of the bus was not guilty of negligence. They concede that the verdict of the jury has established his negligence, and therefore this is not an issue.

We are only concerned here with, (1) The contributory negligence, if any, of the plaintiff's decedent; (2) whether the doctrine of the last clear chance was erroneously applied; and (3) whether the court committed reversible error in admitting certain challenged evidence.

■ The jury were fully and clearly instructed upon contributory negligence and the doctrine of the last clear chance. They resolved these against the plaintiffs in error, and we, under elementary principles, must approve their action unless we can say, as a matter of law, that the plaintiff's decedent was guilty of contributory negligence, or that, as a matter of law, the doctrine of the last clear chance was not applicable.

An eyewitness, one Johnny W. Ray, having no interest in the case, testified. The only other eyewitness was James Thomas Slate, one of the plaintiffs in error and the driver of the bus. His testimony was in sharp conflict with that of Ray. From a careful consideration of the testimony of Ray, the jury reasonably could have concluded that the plaintiff's decedent had proceeded through the intersection, made his turn to the left, and was proceeding to the east on his side of the road when his automobile was struck by the bus. Ray said, in speaking of the position of the Saul automobile when struck, that "it was over, a little over the middle of the road." (Meaning Shell road.) Then Ray was requested to indicate on the map the location of the Saul car when it was struck. He placed it on Saul's right hand side of Shell road. The impact was on the left front of the Saul car. This fact supports Ray's testimony that Saul had made the turn to the east and was proceeding in that direction.

Ray also testified that the bus was 140 to 150 feet east of the intersection when he first saw it and that it was moving at a terrific rate of speed. The impact was of such force as to indicate the rapid speed of the bus. That the bus was making high speed is further indicated by the fact that it knocked the Saul car some forty-four feet, demolished it, and then the bus continued on for more than seventy feet into the plowed field after the brakes, which were in good order, had been applied.

It is conceded that the driver of the bus had an unobstructed view of the intersection for more than 500 feet and, as already indicated, the weather was clear and the road dry. The collision occurred at approximately 3:40 in the afternoon.

■ If Saul had practically negotiated the intersection and was on his side of the road proceeding to the east as the jury might have believed from the testimony of Ray, and the driver of the bus turned the bus to his left into Saul's car instead of proceeding on his right side of the highway, then the jury could have concluded that the sole, proximate cause of the collision, and the death of Saul, was the negligent failure of the driver of the bus to drive on his right side of the road at a lawful rate of speed. Under this aspect of the case, which might have been adopted by the jury, the case would have resolved itself into one of the negligence of the driver of the bus, which now, in the light of the verdict, is conceded to have been established, and the alleged contributory negligence of the plaintiff's decedent, of which the jury has absolved him. A verdict for the plaintiff would have followed.

■ Another view of the case which might have been adopted by the jury is that the plaintiff's decedent, while proceeding into the intersection at a slow rate of speed, did not have sufficient time to clear the way of the bus, but that the bus being 150 feet away at the time it approached the intersection, the driver had a last clear chance, in the exercise of the proper care, to slow down, or veer to the right, or perform some other act which would have

saved the plaintiff's decedent. There was ample room on the right for the bus to have passed safely, or if necessary it could have safely turned to the right into Aberdeen road.

A driver of an automobile may drive across an intersecting street in view of an approaching bus or other traffic, if it is consistent with ordinary prudence to do so, without being guilty of contributory negligence. The evidence in the case at bar is such that reasonable men might differ as to whether or not a person of ordinary prudence would have entered the intersection in question under the then existing circumstances. Consequently the verdict concludes the question of contributory negligence against the contention of defendants. *Virginia Elec., etc., Co.* v. *Wright*, 170 Va. 442, 196 S. E. 580.

There are many things to be considered in deciding when contributory negligence is or is not a bar to the plaintiff's right of recovery, and when the doctrine of the last clear chance should or should not be applied in cases of this kind. To reach the proper conclusion consideration must be given to distances, speed of automobiles, and other traffic, the time within which they may be slowed down or stopped or speeded up or diverted in their course, the risk, under the circumstances, of entering an intersection in view of approaching traffic, and whether one is in the exercise of ordinary care in doing so. These are all matters of opinion, estimates, and best judgment. Naturally there would be a difference in the testimony of witnesses on these things, and a jury is the better tribunal to decide such questions.

If the collision occurred before the plaintiff's decedent had passed through the intersection, and if he were not entirely free of negligence in going slowly into the intersection under the circumstances, still there is testimony which, if believed by the jury, placed the bus 140 to 150 feet away when he entered the intersection. If the driver of the bus saw the deceased and had an opportunity to save him and failed to do so, this would have been sufficient to carry the question of the last clear chance to the jury. The same would apply even if the driver of the bus did not see the

automobile of the plaintiff's decedent. It was his duty to keep a lookout, and if he had done so, he would have been bound to have seen the automobile proceeding slowly into the intersection. Under these circumstances the jury could have found that the plaintiff's decedent was in a position of peril and the driver of the bus could have done something to have saved him but failed to do so. There was enough evidence on the doctrine of the last clear chance to warrant the court in submitting it to the jury. *Roanoke Ry., etc., Co.* v. *Korb,* 155 Va. 296, 154 S. E. 550.

Witness Hart testified that the bus was preceding him at a point one-half to three-quarters of a mile from the intersection in question, and he attempted to overtake and pass the bus but the driver of the bus increased his speed and he (Hart), though he reached a speed of 50 to 55 miles per hour, was unable to overtake and pass the bus. The plaintiffs in error claim that this occurred 1.2 miles away. The admissibility of the evidence was challenged because it is claimed to be too remote, and further, because it was claimed that Hart failed to identify the bus. But the court admitted it for what it was worth, leaving its weight and credibility to the jury.

Generally the admissibility of evidence of this kind is a matter of discretion with the trial court, and unless it exercises an arbitrary discretion this court will not interfere. *Grinstead* v. *Mayhew,* 167 Va. 19, 187 S. E. 515, and *Butler* v. *Greenwood,* 180 Va. 456, 23 S. E. (2d) 217.

Here the plaintiff's case did not depend upon this evidence. There is enough to sustain the verdict without it. Even if it be assumed that the court erred in admitting this testimony, this court would not be justified in reversing the judgment for this error. There is no question of the negligence of the defendants. The question of the freedom from contributory negligence of plaintiff's decedent has been resolved in his favor. Likewise, the jury could have found that the defendants had a last clear chance to save the plaintiff's decedent and failed to do so. Not a single instruction is challenged, and there is nothing reflected in the

verdict that would disclose that the testimony caused the jury to be improperly influenced by it. Therefore, we would not reverse the judgment under the circumstances, even if we thought that the admission of the testimony was erroneous.

However, as we have already indicated, we are of opinion that the court did not abuse its discretion in admitting the testimony. There was some conflict in it as to the identity of the bus. Witness Hart said the bus he attempted to pass was the bus involved in the collision. Others said it was not. Hart identified the bus in this way: "But from all appearances, the back of the bus, with the smoky part on the side from the exhaust, I would say it was the same bus." The weight and credibility of the testimony was for the jury.

We are of opinion that the judgment is correct and should be affirmed.

*Affirmed.*