## Richmond

HENRY HOWARD POWELL v. W. N. NICHOLS, ADMINISTRATOR, ETC.

March 10, 1969.

Record No. 6854.

Present, All the Justices.

*Frank Slayton (Easley, Vaughan and Slayton,* on brief), for plaintiff in error.

*Frank C. Maloney, III (Reginald H. Pettus; R. Page Morton; Hirschler and Fleischer,* on brief), for defendant in error.

CARRICO, J., delivered the opinion of the court.

The plaintiff, W. N. Nichols, administrator of the estate of G. W. Nichols, deceased, filed a motion for judgment against the defendant, Henry Howard Powell. The motion sought the recovery of damages for the allegedly wrongful death of G. W. Nichols who died as the result of a collision between a pickup truck driven by him and an automobile operated by the defendant.

A jury trial resulted in a verdict in favor of the plaintiff in the sum of $20,000. The trial court overruled the defendant's motion to set aside the verdict and entered final judgment for the plaintiff. The defendant was granted a writ of error.

According to familiar principles, the evidence will be stated in the light most favorable to the plaintiff.

The collision which resulted in the death of Mr. Nichols occurred at approximately 8:30 a.m. on a clear, dry day in the latter part of July, 1966, on State Route 746 in Charlotte County. Route 746 is 20 feet wide and runs generally north and south. At the accident scene, Route 746 is intersected by State Route 647 from the southwest at an acute angle, forming a distorted "T" intersection. The mouth of the intersection is 150 feet wide where Route 647 joins the westerly edge of Route 746. Each road has a blacktopped surface.

A stop sign located 10 feet from the edge of Route 746 controls traffic on Route 647. The sign divides the mouth of the latter road into two forks, the right-hand fork for traffic passing to the right of the sign to turn south on Route 746 and the left-hand fork for traffic passing to the left of the sign to turn north.

Approximately 550 feet north of the intersection, Route 746 is intersected by another state route, the latter intersection being known as Fears Corner. Between Fears Corner and Route 647, Route 746 rises gradually and then slopes downgrade past the intersection in question.

The evidence concerning the visibility from Route 647 to the north on Route 746 was in some confusion. The investigating state trooper testified that a driver whose vehicle was standing at the stop sign on Route 647 was "not able to see north," apparently because of a bank and the foliage of some bushes on the northwest corner of the intersection. However, photographic exhibits contained in the record show otherwise. The trooper did state that from a point "one large

step" from the western edge of Route 746, visibility to the north was 500 feet.

The defendant called as a witness a surveyor who had prepared a plat and profile of the intersection and its approaches. The surveyor testified that from a point in the middle of Route 746 at the intersection, a driver could see to the north a distance of 742 feet, or approximately 200 feet beyond Fears Corner. The witness further testified that if a driver stopped "at the stop sign . . . he couldn't see . . . as far."

The jury was permitted to take a view of the accident scene, with the request of the plaintiff's counsel, not objected to by the defendant, to "stop at the stop sign and look in both directions."

Mr. Nichols, the deceased, died without making a statement concerning how the accident occurred. However, the evidence showed that he was proceeding in a northeasterly direction on Route 647 and made a left turn to go north on Route 746. He had traveled to a point 120 feet from the stop sign when the front of his pickup truck was struck in his lane of travel by the front of the defendant's vehicle.

The defendant testified that he was traveling south on Route 746 at a speed of 50 to 60 miles per hour. He stated that as he approached Fears Corner, he "let up off the gas some and that's when [he] saw the pickup truck." He said that the Nichols vehicle was moving at a speed of 5 to 10 miles per hour and "was coming out in the road" when he first saw it. The defendant also testified that he blew his horn and thought Mr. Nichols "was going to stop," so he "stayed on [his] side." The defendant further stated that when the truck "came out in the highway," he "put [his] brakes on and pulled to the left" because his side was "blocked."

The state trooper testified that he found "185 feet of skid marks left by the left side" of the defendant's vehicle and "96 feet of skid marks by the right side," leading from the defendant's lane of travel to the left into Mr. Nichols' lane. The trooper also found dirt, broken glass, and "cut places in the highway" in Mr. Nichols' lane, centered 5 feet 10 inches from the easterly edge of Route 746, or approximately in the middle of that lane. The trooper further stated that the Nichols vehicle was knocked 45 feet from the point of impact and turned around so as to head in a southeasterly direction. The trooper found that the defendant's vehicle traveled 33 feet

after the impact, "veered to the left into the dirt," and came to rest "in the left ditch."

The impact threw Mr. Nichols from his vehicle, and he was found "laying in the road back of the pickup." The vehicles were severely damaged in the front, with somewhat greater damage to the left front of each.

A daughter of Mr. Nichols testified as a witness for the plaintiff. She stated that she lived one-half mile from the accident scene and that on the morning the accident occurred, she was in her bedroom "facing the road" when she heard "this car . . . making a lot of noise as it came up the road." She looked out as the vehicle went by, and she estimated its speed to be "between 75 and 80 or more." When she later received word of the accident and went to the scene, she identified the defendant's vehicle as the car that "just passed my house flying and it killed my daddy."

A son of Mr. Nichols testified on behalf of the plaintiff that he owned the pickup truck which his father was driving at the time of the accident. He stated that he went to the accident scene and helped move his truck. He said that when the vehicle was moved the wheels "slid on it," and he discovered that it was in low gear. He further testified that "[y]ou have to come to a dead stop to get it in low gear."

■ The defendant first contends that the trial court erred in permitting the plaintiff to recall the state trooper to testify to a measurement he made at the scene of the accident during the course of trial. The incident arose in the following manner:

When the trooper was called as a witness on behalf of the plaintiff on the first day of trial, he testified, in the absence of the jury, as to a measurement he had made on the morning of the accident. The measurement was made from the point "you would normally come out of" Route 647 to the debris and "cut places" the trooper found in Mr. Nichols' lane of travel on Route 746. The court ruled the trooper's testimony inadmissible because it "assumed the point of exit by Mr. Nichols." The court remarked that if the trooper could establish a "beginning point" for his measurement, the testimony "would be admissible."

In the presence of the jury and in response to a question from a juror, the trooper estimated that the distance from the debris and "cut places" in the road to the stop sign on Route 647 was "approximately 90 feet."

On the second day of trial, the plaintiff recalled the trooper to the witness stand, and he testified that he had that morning returned to the scene of the accident and had measured the distance from the "drop marks" in the road to the stop sign on Route 647. He stated that he found the distance to be 120 feet. The defendant moved to strike the trooper's testimony on the grounds (1) that it was not proper rebuttal evidence and (2) that the marks in the road upon which the measurement was based "could have been made by another accident." The motion was denied. The defendant presses the same grounds of objection on appeal.

We do not agree with the defendant that the trial court improperly admitted the testimony of the trooper regarding the measurement made during trial. In the first place, the testimony was not offered as rebuttal evidence but as additional evidence to supply exactness where guesswork existed. The trooper on the first day of trial could only estimate the distance from the stop sign to the "drop marks" he found in the highway on the morning of the accident. His testimony on the second day of trial was based upon actual measurement.

Secondly, the trooper's testimony as a whole left no doubt that the marks in the road upon which his actual measurement was based could not "have been made by another accident." When he first testified, the trooper described graphically the marks he had seen on the day of the accident by saying they were made "as if you had taken a hammer and chisel and driven it in and dug up the pavement." On the second day of trial, the trooper stated positively that the "drop marks" from which he made his measurement that morning were the same he had seen the day of the accident.

Whether the additional evidence submitted by the plaintiff should have been admitted was a matter resting in the sound discretion of the trial court. The court exercised that discretion in the interest of fair play in a situation where the defendant could not possibly have been taken by surprise or have suffered an injustice. We cannot say, therefore, that the court abused its discretion in this instance. *Fink* v. *Gas and Oil Company*, 203 Va. 86, 89-91, 122 S. E. 2d 539, 541-543 (1961).

The defendant next contends that Mr. Nichols, the deceased, was guilty of contributory negligence as a matter of law because he "did not stop before entering the highway" but drove "across the highway into the path of an obvious danger."

The defendant concedes that Mr. Nichols "is presumed to have obeyed the law," but he argues that "this presumption is overcome by the positive testimony of the defendant that [Mr. Nichols] entered the highway without stopping."

The difficulty with the argument of the defendant is that his testimony does not merit the positive effect he would have us give it. He did testify at one stage that when he first saw the Nichols pickup truck it was "between the stop sign and the road" and that it "didn't stop . . . at any time" thereafter.

However, the defendant testified at other points in his testimony that the truck "was entering the highway" and "was coming out in the road" when he first saw it. And he admitted that he did not know whether Mr. Nichols "stopped at the stop sign." The jury was entitled to accept these latter statements and to conclude therefrom that the Nichols vehicle was actually entering Route 746 when the defendant first saw it and that he was not in a position, therefore, to say whether or not it had previously stopped. Thus, his testimony was not sufficient to overcome the presumption that Mr. Nichols had obeyed the law. *Temple v. Ellington*, 177 Va. 134, 145, 12 S. E. 2d 826, 830 (1941).

It is upon the questions of contributory negligence and proximate cause that the measurement made by the state trooper during trial becomes important. The defendant recognizes the importance of the measurement of 120 feet from the stop sign to the "cut places" in the highway by saying in his brief that the measurement "is the most vital part of the entire case because upon it depends the success and/or failure of the plaintiff's case."

The measurement demonstrated its importance by tending to disprove the defendant's theory that the collision occurred in the intersection because Mr. Nichols negligently drove past the stop sign and "into the path of an obvious danger." At the same time, the measurement supported the plaintiff's theory, submitted to the jury in the form of an instruction granted without objection, that the accident occurred beyond the intersection as the result of the defendant's negligence in driving on the wrong side of the road.

The intersection was a wide one, as has been noted. Even so, the trooper's measurement established the point of impact between the vehicles as being beyond the northernmost limit of the intersection and in the middle of the northbound lane. From this, the jury could

have found that the impact occurred after Mr. Nichols had completed his left turn and was in his proper lane of travel.

But there was more than just the trooper's measurement itself to sustain the jury's verdict. The evidence showed that the stop sign was located 10 feet from the western edge of Route 746. When that 10 feet is deducted from the trooper's 120-foot measurement, the inference is warranted that Mr. Nichols traveled approximately 110 feet after entering Route 746 before he was struck.

The defendant testified that it was when he "let up off the gas" as he approached Fears Corner that he first saw the pickup truck and that it was then entering Route 746 at a speed of 5 to 10 miles per hour. The evidence showed that Fears Corner was approximately 550 feet from the intersection of Routes 647 and 746.

If the defendant was 550 feet or more from the pickup truck when it entered the intersection and if Mr. Nichols then had time at his slow speed to travel approximately 110 feet before he was struck, it cannot be said as a matter of law that he was guilty of contributory negligence in entering the highway when he did. And, in these circumstances, Mr. Nichols' previous failure to stop, if such was the case, would have been a remote and not a proximate cause of the collision.

The evidence reasonably warranted the jury in finding that if the defendant had been operating at a lawful speed and had stayed on his proper side of the road, rather than driving into the left lane, he would have passed by the Nichols vehicle without mishap. Thus, the evidence sustained the jury's conclusion that the defendant's negligence was the sole proximate cause of the collision.

The defendant relies upon the case of *Brown* v. *Damron*, 197 Va. 309, 89 S. E. 2d 54 (1955), and the cases discussed and distinguished in *Newman* v. *Dalton*, 206 Va. 119, 141 S. E. 2d 677 (1965), to support his contention that Mr. Nichols was contributorily negligent. Those cases differ, however, in their factual situations from the one at bar and are not controlling.

Our decision in *Slate* v. *Saul*, 185 Va. 700, 40 S. E. 2d 171 (1946), is of controlling force here. In the *Slate* case, the plaintiff's decedent entered Shell Road in Warwick County from Aberdeen Road. Traffic on Aberdeen Road was controlled by a stop sign. There was no evidence that the deceased stopped before entering Shell Road. He turned to the left to go east on Shell Road when a bus proceeding at a high rate of speed in a westerly direction on the same

road was 140 to 150 feet away. The deceased had traveled 44 feet beyond the stop sign when his vehicle was struck on his side of Shell Road by the bus. We said that the question of the contributory negligence of the deceased was for the jury to decide.

We are of opinion that the trial court did not err in submitting to the jury the issue of the contributory negligence of Mr. Nichols or in refusing to set aside the verdict of the jury on the claimed ground that such negligence appeared as a matter of law.

Finally, the defendant contends that the court erred in granting certain instructions at the request of the plaintiff. However, the instructions were not designated for printing, and they do not appear in the printed record. Nor does the printed record contain the objections to the granting of the instructions asserted by the defendant in the trial court.

We find the instructions in question printed in an appendix to the defendant's brief. But we must look to footnotes in the plaintiff's brief to discover the objections asserted by the defendant in the trial court.

Under these circumstances, we will not consider the trial court's action in granting the disputed instructions. Rule 5:1, § 6(f), Rules of Court; *Gaumont* v. *Highway Commissioner*, 205 Va. 223, 135 S. E. 2d 790 (1964).

In the *Gaumont* case, we refused to consider the trial court's action in refusing certain instructions because they had not been designated for printing and did not appear in the printed record, although they were printed in the appellants' brief. We said:

". . . Rule 5:1, § 6(f), requires that all matters germane to errors assigned must be designated for printing, and printed, in the record or they will not be considered by this Court. . . ." 205 Va., at 225, 135 S. E. 2d, at 791.

In any event, we have looked at the instructions in question and the objections thereto asserted by the defendant in the trial court. While we do not give approval to the instructions, the objections relied upon by the defendant were either without merit or were based upon inapplicable grounds. Other instructions granted by the trial court, which are not in dispute, fully informed the jury of the respective duties imposed upon the parties and, in some instances, placed the defendant in a better position than the evidence warranted.

The judgment of the trial court will be affirmed.

*Affirmed.*