## Richmond

## RONALD PAUL EVANS v. COMMONWEALTH OF VIRGINIA.

March 10, 1975.

Record No. 740433.

Present, All the Justices.

*Robert Bruce Kendall* (*Jack K. Moulton,* on brief), for plaintiff in error.

*John R. Alderman, Special Assistant Attorney General* (*Andrew P. Miller, Attorney General,* on brief), for defendant in error.

I'Anson, C.J., delivered the opinion of the court.

Defendant, Ronald Paul Evans, was indicted by a grand jury for the murder of Michael J. Soules, his four-year-old stepson. He was tried by the court sitting without a jury, found guilty of murder in the second degree, and was sentenced to seventeen years in the State penitentiary.

The crucial question presented on this appeal is the sufficiency of the evidence to support the judgment of conviction.

The evidence shows that at approximately 11:00 p.m., on March 31, 1973, Michael J. Soules was taken in an ambulance to the emergency room of Norfolk General Hospital, where he was pronounced dead on arrival. Dr. James O. Carleo testified that the body had multiple abrasions all over it. The child's anus was dilated, had some fresh bleeding around it, and was black and blue. It was his opinion that "some kind of blunt trauma" caused the child's death.

An autopsy was performed by the medical examiner who determined that the child had died of abdominal injuries, principally from a major hemorrhage of the liver. There were also lacerations on the colon and pancreas. The medical examiner used color photographs taken of Michael's body to show and explain to the court the injuries inflicted. His testimony also shows that there were approximately 100 bruises and lacerations and numerous tiny hemorrhages on the child's body, but some of the bruises were not of recent origin.

Dr. Roy J. Betti, a Navy pediatrician, testified that he had treated Michael on March 7, 1973, for multiple bruises on his face and forehead and for two black eyes. He expressed the opinion that the bruises were caused by a "significant trauma" and had been inflicted within the previous twenty-four hours. Dr. Betti said that defendant and his wife told him that another child had hit Michael in the face with a stick.

Clarence H. Dodd testified that he had seen Michael at various times with bruises on his body. Dodd stated that when the child was visiting in his home in mid-December 1972 he noticed that Michael had a black eye and bruises on his sides and buttocks. On that occasion, Dodd said that when Michael saw him with a belt in his hand the child became terrified and ran away screaming, "No, no, Ronnie's belt."

Jo Ann Ballance, who lived in the same apartment building as the Evanses, testified that she had seen bruises and scratches on Michael. She said that on March 16, 1973, she saw defendant washing his car and when Michael attempted to open the car door defendant punched him in the chest with his fist and caused him to fall and hit his head on the curb. She also stated that she saw Michael at approximately 4:00 p.m. on the day of his death and did not observe any marks on his face or head at that time. Edith Marabella testified that she was with Jo Ann Ballance at 4:00 p.m. the same day, and she did not observe any marks on Michael's face or head.

Detective Ralph J. Mears testified that he and Detective J. A. Huddle began an investigation of the case the night of Michael's death. They took pictures of the child's body and questioned defendant and his wife, after advising them of their rights. Mears said that defendant told him he had "whacked" Michael on his rear six or eight times with his belt that night because he had soiled his pants. He stated that the defendant admitted that he had struck the child on several other occasions, using either his hand or his belt, and had bitten Michael on his ear on one occasion. Mears also said that defendant told him that he had no great love for the child.

Defendant testified that he loved Michael and related that he had initiated proceedings in Pennsylvania to help his wife obtain custody of the child after his natural father had put him in a foster home. He said that they obtained custody of Michael in November 1972. At that time Michael was four years old but he had not been "potty" trained. Defendant denied ever mistreating Michael and stated that on the occasion Mrs. Ballance saw him hit the child, he had only slapped him for getting in the way and had not struck him with his fist.

Defendant said that on the night of the child's death Michael was getting ready for bed, and while he was putting on his pajamas he soiled them and messed up the floor. Defendant said he was provoked by the incident and beat the child on his buttocks with his belt. He placed Michael in the bathtub, turned on the water, and directed his wife to wash him. About five minutes later he heard Michael crying, returned to the bathroom, and found Michael swaying back and forth in the tub. His eyes were glassy, and he had coughed up blood. He picked up Michael, dried him, and tried to revive him by slapping and

throwing water on his face. The child collapsed and defendant attempted to revive him by mouth-to-mouth resuscitation. Michael was then taken by ambulance to the hospital.

Defendant's wife corroborated his story as to what happened on the night of Michael's death. She stated that she was not alarmed by the whipping that her husband had given the child and that Michael did not appear to be injured. She said that her husband had never mistreated Michael or her other child by a previous marriage.

Mrs. Evans also testified that she and her husband were taken to police headquarters for questioning. She said that Detective Mears, in attempting to induce her to give damaging statements against her husband, told her that her husband had made statements implicating her in the death of Michael.

Defendant's mother, sister and brother all testified to the effect that they had never seen him mistreat the child other than to spank him for soiling his pants. They stated that they saw some bruises on Michael at various times, but saw no black eyes or any serious injuries. They all said that defendant "got along fine" with his wife and her children. Several of defendant's superiors in the Navy also testified that he was a good worker, was very quiet, well liked, and gave them no problems.

In rebuttal, the Commonwealth called Detective James A. Huddle, who had assisted in the investigation of the case. After refreshing his memory from notes prepared during the investigation, Huddle testified that Mrs. Evans had told him that her husband had beaten Michael on several occasions with his fists and had kicked and bitten him. Mrs. Evans related to him that she had marital problems with defendant because of the beatings he had inflicted on Michael and that she was "scared to death" of her husband. Huddle also stated that defendant had told him he had no love for the child.

Defendant contends that the evidence of the nature and character of the acts which resulted in the child's death was insufficient to prove beyond a reasonable doubt murder in the second degree. We do not agree.

■ On appeal of a conviction, we must consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Boykins* v. *Commonwealth*, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969);

*Allison* v. *Commonwealth,* 207 Va. 810, 811, 153 S.E.2d 201, 202 (1967). When the sufficiency of the evidence is attacked, the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed by us unless plainly wrong or without evidence to support it. *Granberry* v. *Commonwealth,* 184 Va. 674, 678, 36 S.E.2d 547, 548 (1946).

In Virginia every unlawful homicide is presumed to be murder in the second degree, and thus is considered to have been the result of malice. The burden is on the accused to reduce the offense and on the Commonwealth to elevate it. *Painter* v. *Commonwealth,* 210 Va. 360, 364, 171 S.E.2d 166, 169 (1969), and the many cases there cited.

Whether an accused is guilty of murder in the second degree or of some lesser crime depends upon the nature and character of the act or acts which resulted in the victim's death. *See Biddle* v. *Commonwealth,* 206 Va. 14, 21, 141 S.E.2d 710, 715 (1965).

There was ample evidence in this case upon which the trial judge could base his finding that Michael's death resulted from the atrocious and malicious acts committed upon him by defendant.

The evidence shows that defendant had no love for his stepson. The bruises seen on Michael's body soon after he came to live with his mother and stepfather show that he had been badly mistreated. In fact, defendant's treatment of the child had caused marital discord between defendant and his wife. Defendant admitted striking Michael with his belt and by other means on several occasions. The sight of a belt terrified the child.

When Michael was brought to the hospital on the night of his death his entire body was covered with contusions, bruises and abrasions which were caused by some kind of "blunt trauma." There was evidence that Michael had no bruises on his face or head late that afternoon. Defendant admitted that he had struck the child six or eight times on his buttocks with his belt that night. The trial court did not have to accept defendant's statement that he struck Michael only on his buttocks or only with a belt. The number and severity of Michael's injuries indicated that defendant had beaten the child with such force as to cause his death.

Defendant assigned other errors in his brief relating to certain rulings of the trial court but they were not pursued in oral argument before us. Nevertheless, we will treat them briefly.

■ There is no merit in defendant's contention that the trial court erred in permitting Detective Mears, the chief investigator, to remain in the courtroom during the trial. *See Jefferson v. Commonwealth,* 212 Va. 255, 256, 183 S.E.2d 734, 735 (1971).

It was not error to permit Detective Huddle to refresh his memory from notes made during the investigation of the case. *See Farmer v. Commonwealth,* 205 Va. 609, 611, 139 S.E.2d 40, 42 (1964); *Mankin v. Aldridge,* 127 Va. 761, 768, 105 S.E. 459, 462 (1920).

There is no merit in defendant's contention that the statements made by him and his wife to the detectives were not voluntary. The record shows that the statements were made after both were fully advised of their rights. The fact that Mrs. Evans claimed that the police misrepresented that her husband had implicated her in the death of Michael does not render her statement to the officers involuntary. *See Frazier v. Cupp,* 394 U.S. 731, 739 (1969).

■ The admission in evidence of the color photographs of Michael's body was within the sound discretion of the trial court. *See Brown v. Commonwealth,* 212 Va. 515, 519, 184 S.E.2d 786, 789 (1971).

Lastly, we do not agree with defendant's contention that the trial court erred in admitting in evidence testimony that he had struck Michael on prior occasions. Such evidence is admissible in cases where the motive, intent or knowledge of the accused is involved, or where the evidence is connected with or leads up to the offense for which the accused is on trial. *Minor v. Commonwealth,* 213 Va. 278, 280, 191 S.E.2d 825, 826-27 (1972); *Kirkpatrick v. Commonwealth,* 211 Va. 269, 272, 176 S.E.2d 802, 805 (1970).

In the instant case, the evidence of prior beatings of Michael by defendant was relevant to establish the intent to do serious bodily harm to the child, to show defendant's feelings toward him, and to indicate a pattern of conduct which led to Michael's death.

For the reasons stated, the judgment of the court below is

*Affirmed.*