COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Bumgardner and Frank
Argued at Richmond, Virginia


MICHAEL LEE GRAY, JR.

                                   MEMORANDUM OPINION[*] BY
v.    Record No. 2017-99-3         JUDGE ROBERT P. FRANK
                                        JULY 25, 2000
COMMONWEALTH OF VIRGINIA


                FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
                     B. A. Davis, III, Judge Designate

              Raphael E. Ferris (Rider, Thomas, Cleaveland,
              Ferris & Eakin, P.C., on briefs), for
              appellant.

              Kathleen B. Martin, Assistant Attorney
              General (Mark L. Earley, Attorney General, on
              brief), for appellee.


     Michael Lee Gray, Jr. (appellant) was convicted of two counts

of involuntary manslaughter in the operation of a motor vehicle in

violation of Code §§ 18.2-30 and 18.2-36.  On appeal, he contends

the evidence was insufficient to convict him of the offense.  We

disagree and affirm the judgment of the trial court.

                          I.  BACKGROUND

     Appellant was involved in an accident on Route 220 near the

border of Franklin and Henry Counties.  Appellant's truck struck

the rear of a vehicle that was stopped to wait for a school bus to

_____

          * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

unload children.  The two occupants of the vehicle that appellant struck were killed.

On Route 220, approaching the scene of the accident, there are two "S" curves, one to the left and one to the right.  The road crests to a knoll (the first knoll) as it leaves the "S" curves.  A yellow diamond-shaped "School Bus Stop Ahead" sign is on either side of the road at the end of the "S" curves.  After the first knoll, the road flattens out.  The sight distance from the top of the first knoll to the accident scene is four-tenths of one mile.  The accident scene is visible from the first knoll.

After the flattened, straight portion of Route 220, the road goes over a second knoll.  After the second knoll, the road curves to the right.  Thereafter is the accident scene.  Trooper Harris of the Virginia State Police testified that the sight distance from the top of the second knoll to the accident scene was 315 feet, but he stated that a more accurate distance would be 415 feet because the height of the school bus would make it visible at an earlier point.

Timothy Truman was driving south in the left lane of Route 220 on the day of the accident.  Appellant, who was driving a 1997 International rollback truck, passed Truman's vehicle in the right lane.  Both vehicles were traveling between 55 and 60 miles per hour.  Appellant approached some "relatively steep curves," he "darted into . . . the left-hand lane and then went back across into the right-hand lane," basically driving straight through the

-

curves.  Appellant's right turn signal remained on.  Truman passed appellant, deciding that he did not want to follow him because he was uncertain of what appellant was going to do next.

As Truman came out of the last "S" curve and drove over the first knoll, he could "see a pretty good long distance," which was later determined to be four-tenths of one mile.  Truman then observed a standard-size yellow school bus ahead of him in the straight portion of the road.  The bus "was moving pretty slow," and there were two cars directly behind the bus.  The bus was almost over the top of the second knoll when Truman went into the dip.  Truman looked into his rearview mirror and saw appellant exit the last "S" curve at the top of the knoll.  Then, he saw that the red and yellow lights on the back and top of the bus were flashing.  Seeing that the bus was going to stop, Truman moved from the right to the left lane, intending to pass the bus when it began moving again.

Truman "eased up" because the bus and the other two cars were going slowly.  He then came to a complete stop, his front bumper aligned with the back bumper of the car appellant struck, which was stopped directly behind the school bus in the right lane. Truman saw appellant "was coming on" in the right lane and knew that a collision could not be avoided.

Appellant's truck smashed into the car, killing the driver and her eight-year-old granddaughter.  The crash propelled the car

-

into the school bus and pushed the bus a short distance down the road.

Trooper Harris interviewed appellant at the scene. Appellant said that he had been looking up and down at his clipboard. He laid it down and when he looked up, the school bus was there.

Harris again interviewed appellant the next day at appellant's workplace. Appellant stated that he saw the school bus twice. He first saw the school bus as he came out of the "S" curves, at the top of the first knoll, but he did not slow down. He next saw the school bus when it had stopped.

According to appellant, "traffic was moving to [his] left side. [He] saw the school bus on up there, maintained [his] speed at 55, noticed the bus was stopped, did not see the lights, cut to the left to try to miss the white car, [and] hit the bus." Appellant had not seen the posted signs for "School Bus Stop Ahead." Appellant had been driving his normal vehicle and said he usually went through the area earlier in the day but had been "running late because his truck had been broke down [and] had been worked on."

Harris demonstrated at trial how appellant said he had looked at the clipboard, nodding his head up and down about four times before laying the clipboard aside. Appellant told Harris that he had been looking at his clipboard, looked up at the road, looked back down at the clipboard, looked up at the road, looked back at the clipboard and placed it on the seat. When he looked up again,

-

he saw the school bus, and the collision occurred.  Appellant
further said he was looking at the clipboard through the "S"
curves that preceded the first knoll.

Harris later observed traffic at the crash site.  He noted
that while cars went out of sight for two or three seconds as they
came through the dip and up the second knoll, both a
tractor-trailer and a school bus remained visible.

The parties stipulated that the truck had no mechanical
defects on the day of the collision and that appellant was not
under the influence of alcohol or drugs at the time of the
collision.

Appellant moved to strike the evidence contending that the
requisite criminal negligence had not been proved.  The court took
the motion under advisement.  Appellant renewed his motion at the
conclusion of his evidence.  The trial court denied the motion and
convicted appellant of two counts of involuntary manslaughter,
commenting that the appellant was guilty of gross inattention.
The trial court concluded that appellant saw or should have seen
the school bus and should have taken the steps necessary to avoid
an accident.

## II.  ANALYSIS

Under familiar principles of appellate review, we examine the
evidence in the light most favorable to the Commonwealth, granting
to it all reasonable inferences fairly deducible therefrom.  See
Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418

-

(1987).  The judgment of a trial court will be disturbed only if plainly wrong or without evidence to support it.  See id. (citations omitted).  The inferences to be drawn from proven facts are matters for determination by the fact finder.  See Hancock v. Commonwealth, 12 Va. App. 774, 782, 407 S.E.2d 301, 306 (1991) (citing Johnson v. Commonwealth, 209 Va. 291, 295, 163 S.E.2d 570, 574 (1968)).

"[I]nvoluntary manslaughter in the operation of a motor vehicle [is defined] as an 'accidental killing which, although unintended, is the proximate result of negligence so gross, wanton, and culpable as to show a reckless disregard of human life.'"  Greenway v. Commonwealth, 254 Va. 147, 154, 487 S.E.2d 224, 228 (1997) (quoting King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977)).  Criminal negligence is the basis for involuntary manslaughter and has been defined as "'acting consciously in disregard of another person's rights or acting with reckless indifference to the consequences, with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another.'"  Tubman v. Commonwealth, 3 Va. App. 267, 271, 348 S.E.2d 871, 873 (1986) (citation omitted).  Criminal negligence may also exist where the accused knew or should have known the probable results of his acts.  See Keech v. Commonwealth, 9 Va. App. 272, 279, 386 S.E.2d 813, 817 (1989).

-

The defendant must have "had prior knowledge of specific conditions that would likely cause injury to others." Clohessy v. Weiler, 250 Va. 249, 253, 462 S.E.2d 94, 97 (1995).

Appellant contends that he only took his eyes off the road momentarily to look at the clipboard. The record belies his contention. While we agree with appellant that a mere failure to keep a proper look out is insufficient to support a conviction of involuntary manslaughter, see Lewis v. Commonwealth, 211 Va. 684, 687, 179 S.E.2d 506, 509 (1971), the facts of this case are far more egregious than mere inattention.

The record shows that appellant drove a large, rollback wrecker truck as part of his job responsibilities. Appellant stated that he was running late on the day of the collision. An eyewitness saw appellant driving in an unpredictable manner about six miles from the crash site when appellant erratically switched lanes while maneuvering through a series of curves in the road. Appellant also had a turn signal activated, although he never made a turn. Appellant told Harris that he did not see the "School Bus Stop Ahead" signs prior to the accident and that he looked at his clipboard several times, taking his eyes off the curving, hilly road. Appellant also told Harris that when he did see the school bus ahead in his travel lane, he did not decrease his speed but he maintained a 55 mile per hour speed until slamming on the brakes just prior to the collision. Thus, appellant did not slow his driving speed even when he saw the school bus, despite the fact

-

that the time was approximately 3:30 p.m., which is a time when a school bus is likely to make stops. Appellant was familiar with the road. Two other drivers traveling on the same road just ahead of appellant saw the school bus and stopped behind the bus.

The trial court could reasonably conclude that appellant's inattention began six miles prior to the crash site where he was observed driving erratically. His inattention continued through the "S" curves where he did not observe the school bus signs. At the top of the first knoll he saw the school bus, but he did not see the flashing lights and did not reduce his speed. He testified that he was looking up and down at his clipboard but did not put it down until he was at the top of the second knoll. He then saw the stopped school bus, but it was too late to avoid the collision. The trial court could conclude that appellant's attention was focused on the clipboard for nearly four-tenths of one mile or longer.

If appellant's attention were not diverted, he would have seen the school bus signs. He would have seen the school bus' flashing lights before the bus got to the second knoll. He was familiar with the road, and, therefore, he should have known there was a blind spot in the curve after the second knoll. The other motorists were able to safely stop after having observed what appellant should have seen.

The trial judge could conclude that appellant's conduct showed a reckless disregard for human life. Therefore, the

-

evidence was sufficient to prove beyond a reasonable doubt that appellant committed the charged offenses.  We affirm the judgment of the trial court.

<u>Affirmed.</u>

Benton, J., dissenting.

"[I]nvoluntary manslaughter arising from the operation of a motor vehicle should be predicated solely upon criminal negligence proximately causing death." King v. Commonwealth, 217 Va. 601, 607, 231 S.E.2d 312, 316 (1977). "[C]riminal or willful and wanton negligence 'involves a greater degree of negligence than gross negligence, particularly in the sense that in the former an actual or constructive consciousness of the danger involved is an essential ingredient of the act or omission.'" Boward v. Leftwich, 197 Va. 227, 231, 89 S.E.2d 32, 35 (1955). "While each case must be resolved on its own facts, willful and wanton negligence generally involves some type of egregious conduct -- conduct going beyond that which shocks fair-minded people." Harris v. Harman, 253 Va. 336, 341, 486 S.E.2d 99, 102 (1997).

The evidence proved that Gray was momentarily inattentive while driving on a highway having a speed limit of 55 miles per hour. Under the best of circumstances, however, the terrain of the road limited the distance Gray could see. After the school bus passed over the second knoll in the road, it stopped. The limited sight distance that resulted from the terrain, the location of the bus on the downside of the knoll, and Gray's inattention, all contributed to the tragic accident.

At best, this evidence proved Gray was grossly negligent. Gross negligence, however, "is a manifestly smaller amount of

-

watchfulness and circumspection than the circumstances require of a person of ordinary prudence. . . . It falls short of being such reckless disregard of probable consequence as is equivalent to a willful and intentional wrong." Newell v. Riggins, 197 Va. 490, 495, 90 S.E.2d 150, 153 (1955) (citation omitted).

I respectfully dissent.