## Richmond

RELIABLE STORES CORPORATION, T/A SHAW JEWELRY
COMPANY V. LOUISE K. MARSH

April 21, 1978.

Record No. 761665.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Harman and Compton, JJ.

*John E. Clarkson (James C. Howell; Willcox, Savage, Lawrence, Dickson & Spindle, P.C.,* on brief) for plaintiff in error.

*Wayne R. Spencer (Allen C. Tanner, Jr.; Gibson, Cowardin & Spencer,* on brief) for defendant in error.

Cochran, J., delivered the opinion of the Court.

Louise K. Marsh obtained a jury verdict for $9,000 for personal injuries received when she walked into a glass door at the entrance to a jewelry store located in Mercury Mall, a shopping center in Hampton. The operator of the jewelry store, Reliable Stores Corporation, contends on appeal that plaintiff was guilty of contributory negligence as a matter of law which bars her recovery. We agree.

The accident occurred on November 15, 1974, about 8:45 p.m., as plaintiff, an adult in full possession of her faculties, walked alone toward the entrance to defendant's store, intending to have some jewelry repaired. The store was located adjacent to and on the same level as a lighted enclosed walkway, part of the shopping mall. The store was "completely lit up inside."

At the time, positioned across the entrance to the store was a sliding, transparent, colorless glass door, framed in aluminum. For one entering the store, the door could be opened by pulling from left to right a "handle" or "indentation" in the frame, located on the left side of the door. The door, seven feet wide and nine feet high, would then move along a track in the floor and "into" a glass panel of similar size which, together with the closed door, comprised the all-glass inner front of the store, which was recessed between outer glass showcases. A gold decal, depicting an eagle with its wings spread, was affixed to the door facing outward near its center and five feet four inches above the floor. The decal was approximately 13 inches wide and 10 inches high and contained small stars above the eagle. Plaintiff's height was five feet seven inches. Two other decals, three by four inches or smaller, were affixed to the door near the handle.

The evidence showed that plaintiff had entered the store through the same entrance the day before the accident to inquire about the repair work and that the door was open at that time. The evidence further revealed that the door customarily remained open during normal business hours, which extended to 9:00 p.m., but on the night in question it had been closed minutes before plaintiff arrived.

Plaintiff testified that as she neared the entrance, she noticed two store employees and a policeman within the store. When asked whether she was "paying attention to what [she was] doing," she replied:

"Well, I think so. I knew where I was going and knew who I wanted to see and I saw the people in there that I wanted to see. There was the man and the woman that I believe I talked to the night before and I also saw the policeman in there. He was new. He hadn't been there the night before and I remembered thinking to myself, well, what's he doing . . . ."

Plaintiff then attempted to enter the store and, according to her testimony:

"I took five steps and wham I was stopped and I had no idea what hit me and put my hand to my face and it was covered by blood and then I remember I put my hand up to the [door] to feel to see what it was because I just couldn't — even then I couldn't see the glass. I just couldn't understand what had stopped me. It was just a very clear piece of glass . . . . I was looking through clear glass."

Plaintiff stated that as she approached the door she failed to see the eagle decal. When asked on cross-examination whether she was distracted by the policeman's presence, plaintiff stated:

"I feel like I was just looking at the general area, the store in general. I was just sort of looking, taking a lot in. I can't really say truthfully that it was, you know, one thing more than another. I saw all these things. The two people were important to me because I wanted to talk to them. The policeman was important to me because I wanted to know what he was doing. I was looking at the area of the store I was going to go into, where I was going to conduct my business, and it was sort of, you know, just a general glance around the store. So, there were three things that were in that short span of time that were important to me, you know, to accomplish my mission."

Viewing the evidence in the light most favorable to plaintiff, we reject her contention that the question of her contributory negligence was a jury issue. Her own evidence discloses, as a matter of law, that she was negligent and that such negligence was a proximate cause of the accident. *See Presbyterian School* v. *Clark,* 205 Va. 153, 135 S.E.2d 832 (1964); *Snyder* v. *Ginn,* 202 Va. 8, 116 S.E.2d 31 (1960).

Plaintiff admitted that she had visited the shopping mall many times before the accident, that the doors to most of the

stores in the mall were similar to defendant's door, and that she was familiar with that type of door. An examination of the photographs in the record reveals that the glass door panel was encased in a frame made of aluminum strips, which were at least two inches wide. More importantly, the gold decal measuring almost one square foot was affixed near the center of the door at about plaintiff's eye level, readily apparent to a reasonably prudent person exercising due care for her own safety. Nevertheless, plaintiff focused on persons and things within the store as she was entering and completely disregarded objects in plain view directly in front of her which should have commanded her attention. It is clear to us that a proximate cause of plaintiff's injuries was her failure to see that which by the exercise of reasonable care she should have seen.

Consequently, the judgment of the trial court is reversed, and final judgment is here entered in favor of defendant.

*Reversed and final judgment.*

COMPTON, J., dissenting.

In my opinion, the question whether the plaintiff was guilty of contributory negligence under these facts was a matter for the jury to determine.

The majority decides that the plaintiff should have seen that the door was closed. But defendant's use of bright interior lights and its extensive utilization of clear glass, both employed to obtain a display advantage for merchandising defendant's jewelry products, created an "illusion of space" as the plaintiff approached the point of this accident. Such a phenomenon occurs "when the eye and the mind function together to cause a person to 'look through' a glass panel and focus on some solid object on the other side." Wolfstone, *Glass Door Accidents*, 14 Am. Jur. Trials 101, 147. *See also Crocker* v. *WTAR Radio Corp.*, 194 Va. 572, 575, 74 S.E.2d 51, 53 (1953) (plaintiff's contributory negligence held to be a jury question where an illusion of a single floor level was created by bright overhead lights shining on two highly polished surfaces positioned at different levels).

The plaintiff here, who had been in and out the same entrance the day before when the sliding glass door was open, was alert, attentive and observant. Understandably, because of the illusion

resulting from the lighting and the glass, her attention was attracted to the interior of the store past a decal which, as I view the photographs, blended in with the array of merchandise in the background. This evidence, at the very least, warrants the inference that because of the situation existing at the time, the fact that the door was closed was not readily ascertainable by one exercising ordinary care.

The majority notes that "[p]laintiff admitted that she had visited the shopping mall many times before the accident, that the doors to most of the stores in the mall were similar to defendant's door, and that she was familiar with that type of door." My brethren ignore, however, the uncontradicted testimony that "one major difference" existed between the defendant's door and the doors on the other stores. Fixed on *all* the other doors were either stripes or many decals placed at random depicting snowflakes and dots. Such treatment, not employed on defendant's door, would, of course, make obvious the presence of a closed door.

Finally, this is not the case of a plaintiff who was not looking ahead before walking into a glass panel, as was the situation in *Snyder* v. *Ginn,* 202 Va. 8, 116 S.E.2d 31 (1960), cited by the majority. Nor is this a case like *Presbyterian School* v. *Clark,* 205 Va. 153, 135 S.E.2d 832 (1964), also cited by the majority, in which dual hinged glass doors, framed in aluminum with aluminum cross-bars waist high, were readily visible adjacent to the glass panel into which the plaintiff walked. Rather, this is a case in which the hazard of inadequately marked, transparent glass, accentuated by the lighting conditions at the time, deceived a person who was acting reasonably under the circumstances. *See generally* Annot., 41 A.L.R.3d 176.

Accordingly, I think the issue was for the jury and I would affirm the judgment of the trial court.