## Richmond

### RANDALL D. GARDNER

### V.

### OLD DOMINION STEVEDORING CORPORATION

June 17, 1983.

Record No. 801999.

Present: All the Justices.

*John H. Klein (Breit, Rutter & Montagna,* on briefs), for appellant.

*William E. Baggs (Breeden, Howard & MacMillan,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

In this personal injury action, which was tried to a jury, the trial court, on motion by defendant, struck plaintiff's evidence on the ground that the evidence showed plaintiff to be contributorily negligent as a matter of law. On this appeal, appellant first contends that the case should have been tried under maritime law and that a comparative negligence test should have been applied. Appellant further contends that, even if maritime law does not

apply, the question of his contributory negligence should have been submitted to the jury.

Viewing the evidence in the light most favorable to plaintiff, we find the pertinent facts are as follows: appellant, Randall D. Gardner, was a longshoreman who worked as a "deep-sea checker." It was his job to check general cargo, containers, and other freight before it was loaded on ships by other longshoremen. The great bulk of Gardner's work was done on the dock. Infrequently his work would take him aboard a ship.

On November 29, 1979, the day before the events here under review, Gardner was notified to report to work at 8:00 a.m. on November 30, 1979, at the Norfolk International Terminals (NIT) to serve as a checker for Atlantic and Gulf Stevedores Co. Pursuant to his instructions, Gardner arrived at NIT shortly before 8:00 a.m. on November 30, 1979. It was broad daylight and clear when Gardner reached NIT. He drove through the main gate, passed the security post, and traveled "straight down the pier" until he reached Third Street, onto which he turned and began looking for a parking space. He drove along Third Street until that street intersected with Bulkhead Street. At the intersection, Gardner observed a stop sign and came to a halt. At the point where Gardner stopped, his car was resting on a set of railroad tracks. Gardner was familiar with the area and knew the tracks were present.

Just prior to stopping at the intersection, Gardner observed a railcar almost directly in front of him more than 100 yards away. From Gardner's perspective, one end of the railcar was visible. Gardner thought the railcar was standing still. He remained stopped for approximately one minute. During that time, he looked "left and right" for a parking spot; however, he failed to focus his attention directly in front of him.

The railcar that Gardner had observed was not standing still. It was moving towards Gardner, directly in front of him, in his field of vision, at approximately 3 to 4 miles per hour. Gardner testified he thought the railcar was not moving because he did not see anyone walking in front of it as he was accustomed to seeing when railcars were moved about the facility. Yet testimony from two of Gardner's witnesses established that a flagman was walking in front of the railcar to direct traffic.

When the railcar was 10 to 15 yards away from Gardner's car, the flagman, who preceded the railcar, banged on Gardner's car to

warn him to move. Gardner, who was talking to someone at the time, turned his head to determine the purpose of the banging. At the moment Gardner turned to look over his shoulder, the railcar struck his car. Gardner immediately put his car in reverse and backed up.

At the time of the accident, Gardner was not at work. He had not reported to the ship whose cargo he was assigned to check. Nor was he engaged in any other job-related activity. He was merely trying to find a parking space so that he could go to work.

Gardner contends, in essence, that because the accident occurred on the property of NIT, a marine terminal, he has a right to invoke admiralty jurisdiction and to rely upon the comparative negligence test of maritime law. Gardner is wrong. The trial court correctly concluded that maritime law has no application to the present case.

In *Executive Jet Aviation, Inc.* v. *City of Cleveland*, 409 U.S. 249 (1972), the Supreme Court ruled that two criteria must be met before traditional admiralty jurisdiction can be found to exist. First, the injury must occur on navigable water. Second, the alleged wrong must bear a significant relationship to a traditional maritime activity. Gardner is unable to meet either criterion. His injury occurred on land and has nothing whatever to do with a traditional maritime activity. He was hit by a railcar while he was looking for a parking space. Neither looking for a parking space on the premises of a maritime facility nor colliding with a train that is operating on a dock bears a significant relationship to traditional maritime activity.

Apparently recognizing that his claim does not fall within the scope of traditional maritime activity, Gardner suggests that the Admiralty Jurisdiction Extension Act, 46 U.S.C. § 740, enacted in 1948 to extend admiralty and maritime jurisdiction to certain damage or injury done or consummated on land, and the 1972 Amendments to the Longshoremen's and Harbor Worker's Compensation Act, 33 U.S.C. § 901 *et seq.* can be read to extend admiralty jurisdiction to his claim. But the Admiralty Jurisdiction Extension Act is concerned only with "damage or injury . . . *caused by a vessel on navigable water*" and thus is inapplicable here. 46 U.S.C. § 740 (emphasis added).

Further, while the Longshoremen's and Harbor Worker's Compensation Act broadens the scope of a longshoreman's right to recover against his employer for injuries, it limits a longshoreman's

right to recover against third parties. Here, Gardner sues a third party. Moreover, both the Fourth Circuit and the Fifth Circuit have considered and rejected the statutory argument raised by Gardner. *Holland* v. *Sea-Land Service, Inc.*, 655 F.2d 556 (4th Cir. 1981), *cert. denied*, 455 U.S. 919 (1982); *Parker* v. *South Louisiana Contractors, Inc.*, 537 F.2d 113 (5th Cir. 1976), *cert. denied*, 430 U.S. 906 (1977).

Nor is Gardner's position advanced by his reliance upon *White* v. *Johns-Manville Corp.*, 662 F.2d 234 (4th Cir. 1981), *cert. denied*, 454 U.S. 1163 (1982). He contends that *Holland* and *White* are in conflict. Yet *White* is factually distinct from the present problem and, in our view, says nothing to undermine the viability of *Holland*.

*Holland* is not only instructive because of its factual similarity to the instant case; it is also important because it articulates the reasons for the existence of limits on the wholesale extension of federal admiralty jurisdiction. On that subject, the Fourth Circuit wrote as follows:

> To afford Holland a maritime cause of action would intrude on an area that has been reserved for state law. In these circumstances, the Supreme Court has repeatedly warned that we must proceed with caution. . . . *Due regard for our federal system requires that we scrupulously confine federal admiralty jurisdiction to the precise limits defined by Congress.*

655 F.2d at 559 (citations omitted) (emphasis added). Gardner would have this Court rewrite federal law so that he can receive the perceived benefit of a comparative negligence test. We decline. This case is controlled by state law.

■ The central issue is whether the trial court erred in concluding that Gardner was contributorily negligent as a matter of law. We think the trial court was correct. It is crystal clear from the record that, at the least, Gardner was a co-author of his own misfortune. He cannot escape the consequences of his failure to observe events that were open and obvious and there in front of him to be observed.

The accident occurred in broad daylight on a clear day. Gardner was familiar with the area and knew his car was resting on train tracks. He provides no acceptable explanation for his failure

to see a railcar that slowly approached him, squarely in his field of vision, for one minute prior to impact. Gardner's only excuse is that he did not focus forward though he was looking to the left and right for a parking space. In *Reliable Stores* v. *Marsh*, 218 Va. 1005, 243 S.E.2d 219 (1978), we reversed a judgment on a jury verdict and entered final judgment for defendant in a case where plaintiff had walked through a glass door at a shopping mall even though a gold eagle decal was affixed to the door at eye level. There, plaintiff attempted to excuse her inattentiveness by saying her attention was focused beyond the glass door. We wrote as follows concerning plaintiff's failure to focus in the right place:

> [P]laintiff focused on persons and things within the store as she was entering and completely disregarded *objects in plain view directly in front of her which should have commanded her attention.*

218 Va. at 1008, 243 S.E.2d at 221 (emphasis added). Though the facts here are different, the same principle applies. That Gardner failed to focus his attention on the railcar does not cancel his contribution to the accident.

Gardner is just as responsible for the consequences of his inattentiveness as was the plaintiff in *Cunningham* v. *King*, 212 Va. 126, 183 S.E.2d 157 (1971), who collided with another car that was in plain view claiming that she did not see the car until the collision. In *Cunningham*, we reversed a judgment entered on a jury verdict on the ground that plaintiff was contributorily negligent as a matter of law. As we have said on more than one occasion, a person in Gardner's position will not be heard to say that he looked but did not see. *Russell* v. *Kelly*, 180 Va. 304, 309, 23 S.E.2d 124, 126-27 (1942).

Further, the very fact that Gardner was stopped on train tracks should have alerted him to the possibility of danger and caused him to pay special attention to his surroundings. In addition, there was sufficient time between the flagman's banging on his car and the collision for Gardner to have moved out of the way had he been paying attention. Thus, despite the warning inherent in the train tracks and the warning from the flagman, Gardner allowed himself to remain in a position of peril. In these circumstances, there was nothing for the jury to consider.

■ Gardner attempts to raise for the first time on appeal the issue whether the defendant below had the last clear chance of avoiding the accident. Since this issue was not raised below, it will not be considered here. Rule 5:21.

For all the foregoing reasons, we are of opinion that the decision of the trial court should be

*Affirmed.*