Richmond

# GUY RONALD FITZGERALD

v.

# COMMONWEALTH OF VIRGINIA

August 31, 1978.

Record No. 771469.

Present: All the Justices.

*Robert E. Evans (David T. Petty, Jr.; Kizer, Phillips & Petty*, on brief) for appellant.

*Robert H. Herring, Jr., Assistant Attorney General (Marshall Coleman, Attorney General*, on brief) for appellee.

HARMAN, J., delivered the opinion of the Court.

Guy Ronald Fitzgerald (defendant or Fitzgerald) was convicted by a jury of uttering a counterfeit $20 bill, Code § 18.1-94 (3)*, and his punishment was fixed at eight years in the state penitentiary. He has appealed from the trial court's order sentencing him on this verdict, alleging that the court erred in ruling certain evidence admissible.

Fitzgerald was arrested around 3:00 A.M. on July 25, 1975, shortly after he tendered and received change for a counterfeit $20 bill at an all-night service station in Campbell County. Defendant arrived at the service station in a white van, driven by William Ellis (Ellis), shortly before his arrest. Before passing the counterfeit bill, defendant first obtained change for a dollar to use in the vending machines in the station's snack bar. The counterfeit bill was tendered to and changed by the attendant a few minutes later. The attendant testified that this transaction occurred before any police arrived at the service station. Because the $20 bill "did not look like a regular $20 bill", the attendant segregated it in his shirt pocket instead of placing it in the cash drawer.

Shortly thereafter three sheriff's deputies, who were investigating a disturbance involving a white van, arrived at the service station. Each deputy was driving his own police car. The officers engaged Ellis, the van driver, in a conversation. Upon seeing the police, the attendant showed the $20 bill to the officers, who recognized it as counterfeit. When they arrested the defendant, he

---

* Since recodified as Code § 18.2-170(3).

told them that he had received the bill when he cashed his paycheck at a local bank some two weeks earlier. A search of the defendant did not reveal any other counterfeit bills on his person.

Testimony at trial showed that the counterfeit bill was one of a large number of counterfeit $20 bills which "flooded" the southeastern United States in 1975. A United States Secret Service Agent testified that counterfeit $20 bills totaling more than $500,000 were placed in circulation within a short period of time in an area extending from Virginia to Texas. Of this amount, approximately $100,000 was passed in the Lynchburg-Roanoke area. While counterfeit $20 bills bearing three different serial numbers were discovered, the defects in all of those bills were identical in other respects, with the most obvious defect being the quality of the paper used to print them. The bill passed by the defendant was identical, including the serial number, to a bill passed by Ellis on July 6 at Duffy's Pizza Parlor near the gas station.

Over the defendant's objection, the trial court admitted the evidence of Brad Buchanan, formerly assistant manager of Duffy's. This witness testified that Duffy's received a telephone order for a pizza in the name of Robinson around 6:00 P.M. or 7:00 P.M. on July 6, 1975. He identified Ellis as the person who picked up the order and paid another employee for it with a counterfeit $20 bill. He further testified that the defendant, who had accompanied Ellis, did not participate in the transaction but stood nearby. When the employee who received the bill showed it to Buchanan, Buchanan immediately suspected it was counterfeit so he attempted to overtake the two men, who had already left the restaurant. Upon going to the restaurant parking lot, Buchanan observed the men leaving in a white van. He was unable to obtain the license number of the vehicle.

Buchanan immediately called the police, and, while he had not participated in the transaction with Ellis, he was able to give the police a good description of Ellis and to tell them he was driving a white van. He was, however, unable to describe the other man. Subsequent to the defendant's arrest, Buchanan identified both the defendant and Ellis from a photographic array shown to him by the police. From the record, it would appear that Buchanan, under rigorous cross-examination, became somewhat equivocal in his identification of the defendant.

Buchanan's identification was strongly attacked by the defendant, who called Stephen Lloyd as a witness. Lloyd, a friend of both Ellis and the defendant, testified that he accompanied Ellis to the pizza restaurant on the occasion when Ellis picked up a pizza which had been ordered in the name of Janet Robinson, Ellis' girl friend. Lloyd said that the defendant was not present on that occasion.

The defendant testified that he did not know the $20 bill was counterfeit at the time he tendered it to the gas station attendant. He related that he had been terminated from his job about two weeks before his arrest, and had received this bill from a local bank when he cashed his final $75 paycheck. While acknowledging that he was familiar with the location of Duffy's, Fitzgerald testified that he had "never been in there" alone, with Ellis or with anyone else. He also denied engaging with Ellis in any scheme to distribute counterfeit money.

In recalling the events of the night of July 24-25, defendant stated that he had been out with a date; that he had done some drinking and had become sleepy, and then had gone to Lloyd's apartment where he was "napping on the couch". He was awakened by Ellis who came to Lloyd's apartment looking for a girl. After Ellis ascertained from defendant that the girl was not and had not been there, he invited Fitzgerald to accompany him to the service station to get something to eat. While riding to the service station, defendant was told by Ellis that the police were looking for him because of an altercation earlier that night during a party at an apartment complex. The defendant testified that two police cars arrived at the service station while he was eating the food he first obtained from the vending machines. He observed the police talking to Ellis for 10 or 15 minutes. While he was obtaining change for the $20 bill in order to get additional food, the third police car arrived.

Recalled by the Commonwealth in rebuttal, Buchanan, after observing Lloyd and Fitzgerald together, again identified Fitzgerald as Ellis' companion on July 6.

In its instructions to the jury, the trial court cautioned the jury that Buchanan's evidence could be considered only for the purpose of determining whether the defendant knew that the counterfeit bill which he negotiated was counterfeit.

Here, as in the trial court, the defendant argues that for the evidence of the incident at Duffy's to be admissible, "there must be a sufficient showing that Fitzgerald was confederated with Ellis and jointly interested in passing the bill with him at Duffy's. . . . The testimony of Buchanan is the only evidence that Fitzgerald was present in Duffy's, and therefore the sole foundation on which to build proof of confederacy." He further argues that "Buchanan's testimony cannot fairly be said to be of sufficient weight to establish Fitzgerald's presence due to its many inherent contradictions and its resultant inherent weakness. Therefore, the evidence of the incident at Duffy's should have been excluded by the trial court. . . ."

On brief, the defendant also says:

"Fitzgerald contends that the ultimate issue determining admission or exclusion of evidence of the incident at Duffy's is whether the Commonwealth has presented sufficient evidence that Fitzgerald was the person accompanying Ellis on July 6, 1975. The sole factor in resolving the issue is determining the weight to which Buchanan's testimony is entitled. Fitzgerald submits that because of the inherent contradictions of Buchanan's testimony, it is insufficient to show Fitzgerald was present and to establish the existence of a confederacy."

For a defendant to be convicted of uttering a counterfeit bill, the evidence must not only show that he passed counterfeit currency, it must also show that he knew it to be counterfeit at the time he passed it. Code § 18.2-170(3). For, as was stated in *Finn* v. *Commonwealth*, 26 Va. (5 Rand.) 701, 710 (Gen. Ct. 1827):

"The passing [of] a counterfeit note. . . may be of itself a perfectly innocent transaction; the guilt consists in passing it, *knowing* it to be counterfeit. If no other circumstances than those of the transaction itself are given in evidence, it would be impossible to ascertain whether it was passed with this *guilty knowledge*, or not. Hence Courts have been driven to the

necessity in such cases. . . of admitting evidence of the conduct of the prisoner, so that from his conduct on one occasion, the jury may infer his knowledge on another. . . ."

■ *Martin* v. *Commonwealth*, 29 Va. (2 Leigh) 745, 749 (Gen. Ct. 1830), stands for the proposition that evidence that a confederate, in the defendant's presence, passed counterfeit notes of the same description on other occasions is admissible against the defendant to prove scienter or guilty knowledge on his part.

We hold, therefore, that the trial court did not err in admitting Buchanan's evidence. The weight to be given this evidence was, of course, a matter for the jury's determination under an appropriate limiting instruction.

*Affirmed.*