COURT OF APPEALS OF VIRGINIA

Present:   Judges Kelsey, Haley and Petty
Argued at Salem, Virginia

JISTEN TODD CLEMONS

v.        Record No. 0414-07-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE WILLIAM G. PETTY
JULY 1, 2008

FROM THE CIRCUIT COURT OF FRANKLIN COUNTY
William N. Alexander, II, Judge

Larry Gott, for appellant.

Joanne V. Frye, Assistant Attorney General (Robert F. McDonnell,
Attorney General, on brief), for appellee.

A grand jury indicted appellant, Jisten Todd Clemons, for both forgery and uttering

counterfeit currency, in violation of Code § 18.2-170.  Following a bench trial, the trial court

dismissed the forgery charge, but convicted Clemons of uttering forged currency.  He appeals his

conviction, arguing that the evidence produced at trial was insufficient to support his conviction.

Specifically, Clemons contends that the trial court's statement that Clemons' version of

how he came to possess the counterfeit currency "may be the truth; I don't know" should be

considered a finding that he did not know the currency was counterfeit.  Thus, Clemons reasons:

"Not being able to decide whether the defendant's version of the facts is truthful amounts to a

reasonable doubt as to guilt or innocence."  As explained in our discussion below, we disagree

with Clemons' reasoning and affirm his conviction.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

I.

The appellate standard of review for sufficiency of the evidence issues is well established. Initially, we note that "'the judgment of the trial court sitting without a jury is entitled to the same weight as a jury verdict.'" Saunders v. Commonwealth, 242 Va. 107, 113, 406 S.E.2d 39, 42 (1991) (quoting Evans v. Commonwealth, 215 Va. 609, 613, 212 S.E.2d 268, 271 (1975)). Further, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002); see Code § 8.01-680. We do not "substitute our judgment for that of the trier of fact." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002). Finally, when the sufficiency of the evidence to sustain a criminal conviction is challenged on appeal, we "view the evidence in the light most favorable to the Commonwealth, the party prevailing below, and grant all reasonable inferences fairly deducible therefrom." Clifton v. Commonwealth, 22 Va. App. 178, 180, 468 S.E.2d 155, 156 (1996) (citing Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).

In a prosecution for uttering forged currency, the Commonwealth must prove "not only that [the defendant] passed counterfeit money, it must also show that [the defendant] knew it to be counterfeit at the time he passed it." Fitzgerald v. Commonwealth, 219 Va. 266, 270, 246 S.E.2d 899, 902 (1978). Typically, the element of guilty knowledge must be shown by circumstantial evidence. Spitzer v. Commonwealth, 233 Va. 7, 9, 353 S.E.2d 711, 713 (1987) ("'Absent proof of an admission against interest, such knowledge necessarily must be shown by circumstantial evidence.'") (quoting Lewis v. Commonwealth, 225 Va. 497, 503, 303 S.E.2d 890, 893 (1983)); accord Covil v. Commonwealth, 268 Va. 692, 695, 604 S.E.2d 79, 81 (2004). Circumstantial evidence is as competent as direct evidence to prove the elements of a crime so

long as the evidence as a whole excludes all reasonable hypotheses of innocence flowing from it. See Tucker v. Commonwealth, 18 Va. App. 141, 143, 442 S.E.2d 419, 420 (1994). However, while the Commonwealth's evidence must exclude all reasonable hypotheses of innocence, "[t]he hypotheses which must be thus excluded are those which flow from the evidence itself, and not from the imaginations of defense counsel." Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983).

## II.

At trial, the Commonwealth presented sufficient evidence to support Clemons' conviction. The store clerk to whom Clemons gave the counterfeit money testified that Clemons and his friend, Robert Bernard,[1] made several small purchases at a Family Dollar Store in Rocky Mount. Clemons and Bernard paid for these items with ten-dollar bills, for which they received change. The store clerk testified that the ten-dollar bills "looked funny, different from the other ones." She further described the bills as "really different looking than any other ten dollar bill that you have seen before."[2] Accordingly, she and her store manager examined the bills and discovered that "they all had the same serial numbers." Upon that discovery, the store personnel called the police.

When Officer Mark Whitefleet responded to the call he noticed that Clemons was intoxicated and arrested him for being drunk in public. The officer searched Clemons incident to the arrest and found another ten-dollar bill in his wallet. The serial number on the ten-dollar bill Officer Whitefleet found in Clemons' wallet matched the serial number on each of the counterfeit ten-dollar bills passed at the store.

---

[1] Robert Bernard was tried separately.

[2] Clemons argues that the evidence did not support the trial court's observation that "the clerk readily identified [the ten-dollar bills] as counterfeit." We disagree and determine that the trial court's comment was a reasonable inference it could draw from the clerk's testimony.

- 3 -

At trial, United States Secret Service Agent Thomas Fleming testified as an expert on the identification of counterfeit money. Agent Fleming examined the ten-dollar bills in question and testified that they were counterfeit based on his observations that the bills lacked standard security features that were present in all U.S. currency and all bore the same serial number. Significantly, he also explained that he could tell the bills were counterfeit even without close examination because "the color, obviously, is not the same color that genuine money is [sic]." Agent Fleming also examined the ten-dollar bill that Officer Whitefleet found in Clemons' wallet and determined that it was a valid ten-dollar bill.

Based on the facts recounted above, the trial court determined that there was sufficient circumstantial evidence to find that Clemons knowingly possessed and passed a counterfeit bill. The court relied on the following facts in making its decision: (1) Clemons possessed the original, valid ten-dollar bill as well as the copy that he gave to the store clerk for "something that didn't cost much and . . . got the change;" and (2) the bill was readily identifiable as a counterfeit bill.[3]

III.

Clemons initially argues that his conviction should be reversed because the trial court allegedly made an equivocal finding regarding the credibility of his evidence that Bernard gave him the counterfeit ten-dollar bills and that he used them unknowingly. He bases this argument on the following excerpt from the findings the trial court pronounced at the conclusion of trial:

> Trial Court: [In] your testimony [] you say you got [the bill] from Mr. Bernard. I am not bound to accept that as being the truth. It may be the truth; I don't know. However, I do know that you did pass a bill. . . .

\*   \*   \*   \*   \*   \*   \*

---

[3] The trial court noted: "It doesn't take an expert to look at those bills to determine whether they are counterfeit or not. You know they are counterfeit by looking at them just as I do." We have examined the exhibits in question and conclude that the trial court's observation is certainly a reasonable inference that can be drawn from the evidence.

> I am going to give you the benefit on whether you actually copied it or not. The inference is that you are in the possession of it that you are the person that actually did the forging, but I will give you the benefit of that, but I think for me the circumstances do prove that you knew that the one that you passed was counterfeit, and I do find you guilty.

We do not agree that the trial court's comment evidenced that it harbored a reasonable doubt as to Clemons' guilt on the uttering charge. Read in context, the trial court's comment that Clemons' testimony regarding how he came to possess counterfeit currency "may be the truth" did not pertain to its findings pertaining to the element of guilty knowledge necessary to convict for uttering. Instead, viewed in context, this comment referred to the forgery charge that the court dismissed. See Yarborough v. Commonwealth, 217 Va. 971, 978, 234 S.E.2d 286, 291 (1977) (We do not "fix upon isolated statements of the trial judge taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied."). Further, because the source of the counterfeit currency is not an element of the offense of uttering, it is legally irrelevant to that charge.

IV.

Here the evidence was clearly sufficient to establish that Clemons was aware the currency he passed was counterfeit. As the trial court found, Clemons possessed the genuine template from which the four copies had been made. He used the bill to purchase an inexpensive item, ensuring that he received a significant amount of change. Finally, the bill in question was readily identifiable upon common examination as bogus. Cf. Carlton v. Commonwealth, 23 Va. App. 629, 478 S.E.2d 730 (1996) (holding that the Commonwealth failed to prove beyond a reasonable doubt that the accused passed a lottery ticket knowing it had been altered where the store clerk did not observe that the ticket had been altered, and the record showed that an expert was required to determine that the ticket in evidence had been altered).

From this evidence, taken as a whole, we cannot say that the trial court's findings were plainly wrong or without evidentiary support, and accordingly we affirm Clemons' conviction.

<u>Affirmed.</u>